John A. PAVLOVSCAK, Plaintiff

v.

John L. LEWIS, Henry G. Schmidt, and Josephine Roche, as Trustees of the United Mine Workers of America Welfare and Retirement Fund of 1950, Defendants.

Civ. A. No. 16096.

United States District Court
W. D. Pennsylvania.

Dec. 22, 1960.

See also 168 F.Supp. 839.

**206**

Jerome M. Libenson, Pittsburgh, Pa., for plaintiff.

Alexander Unkovic, Edward Good, Kountz, Fry & Meyer, Pittsburgh, Pa., Val. J. Mitch, Charles L. Widman, Washington, D. C., for defendant.

McILVAINE, District Judge.

The above-entitled cause came on regularly for trial and the Court having duly considered the evidence and being fully advised in the premises now finds the following:

### Findings of Fact

1. Plaintiff is a citizen of the State of Pennsylvania; defendant trustee John L. Lewis is a citizen of the State of Illinois; defendant trustee Henry G. Schmidt is a citizen of the State of Ohio; and defendant trustee Josephine Roche is a citizen of the State of Colorado.

2. The matter in controversy, filed on August 8, 1957, exclusive of interest and costs, exceeds the sum of $3,000.

3. By agreement made and known as the National Bituminous Coal Wage Agreement of 1950, the United Mine Workers of America and the operators signatory to said agreement created the United Mine Workers of America Welfare and Retirement Fund, an irrevocable trust. The money to be paid into said fund was to be provided by the signatory operators, based on the number of tons of coal produced and mined by each signatory operator. The Fund was to be managed by three trustees, or their successors, and the defendants are the existing trustees of said Fund, which Fund has continued from March 5, 1950 until the present time.

4. One of the purposes of the United Mine Workers of America Welfare and Retirement Fund of 1950 was to provide future payment of pensions and annuities to qualified retired employees of the signatory operators. The trustees of said Fund have pursuant to said purpose regularly paid $100 monthly from the date of approval of the application to each applicant who has met the qualifying requirements of said Fund.

5. The requirements as promulgated by the defendant trustees for plaintiff to receive his pension are as follows:

An applicant shall be eligible for a pension if he has:

A. Attained the age of sixty years or over at the time of his application for pension.

B. Completed twenty years service in the coal industry in the United States, its possessions or territories, or the Dominion of Canada within the thirty year period immediately preceding his application for pension; a year of service being one for which the applicant has:

1. Worked in a job classified in any National Coal Wage Agreement for an employer in the Coal Industry.

2. Rendered service as an employee of the United Mine Workers of America in the Coal Industry and is not eligible for a pension under the United Mine Workers of America pension or retirement plan.

3. Served in the military service of the United States in any war or national emergency.

C. Retired from or ceased work in the Bituminous Coal Industry after May 28, 1946, following regular employment in a classified job and was regularly employed in a classified job in the Coal Industry immediately preceding May 29, 1946; providing that if he had retired from or ceased working in the Bituminous Coal Industry prior to May 29, 1946, he shall be eligible for a pension only upon the completion of twenty years service in the Bituminous Coal Industry, and meets the other requirements of eligibility as contained in Paragraphs A and B and its subsections, subsequent to May 28, 1946.

6. Defendant trustees admit plaintiff was past sixty years of age when he applied for his pension on July 5, 1953.

7. Defendant trustees admit plaintiff's work record for the thirty years immediately prior to this pension application to be as follows:

| Company | Period |
|---|---|
| Jamison Coal & Coke Company | Oct. to Dec. 1922 |
| " " " " " | 1923 |
| " " " " " | 1924 |
| " " " " " | 1925 |
| H. C. Frick Coal & Coke Company | December 1925 |
| " " " " " " " | Jan. to Feb. & June to Dec. 1926 |
| " " " " " " " | 1927 |
| " " " " " " " | 1928 |
| " " " " " " " | 1929 |
| " " " " " " " | 1930 |
| " " " " " " " | 1931 |
| " " " " " " " | Jan. to Aug. 1932 |
| Jamison Coal & Coke Company | Aug. to Dec. 1933 |
| " " " " " | 1934 |
| " " " " " | 1935 |
| " " " " " | 1936 |
| " " " " " | 1937 |
| " " " " " | 1938 |
| " " " " " | 1939 |
| " " " " " | 1940 |
| " " " " " | 1941 |
| " " " " " | Jan. to Oct. 1942 |
| Outside the Coal Industry as follows: | Oct. 19, 1942 through Oct. 21, 1946 |
| Stupakoff Ceramic & Mfg. Co. | Oct. through Dec. 1942 |
| " " " " " | 1943 |
| " " " " " | 1944 |
| " " " " " | 1945 |
| " " " " " | Jan. through Oct. 1946 |
| W. C. Dillon Mine | Jan. through Sept. 1947 |
| Carpentertown Coal & Coke | Sept. to Dec. 1947 |
| " " " " | Jan. to June 1948 |
| Jamison Coal & Coke Company | June to Dec. 1948 |
| " " " " " | 1949 |
| " " " " " | 1950 |
| " " " " " | Jan. to April 1951 |
| Outside the Coal Industry as follows: | March 13, 1951 through July 4, 1958 |
| Stupakoff Ceramic & Mfg. Co. | March through Dec. 1951 |
| " " " " " | 1952 |

This work record totals twenty-four years within the maximum thirty year period immediately prior to plaintiff's application for pension permitted to be used pursuant to Trust Fund regulations in calculating plaintiff's application. If plaintiff had regularly worked in the coal industry in a classified job immediately prior to May 29, 1946, only twenty years work in a classified job in the aforesaid thirty year period immediately preceding plaintiff's application for pension would be necessary to satisfy coal industry service requirements of the Trust Fund regulations.

8. If plaintiff had not regularly worked in the coal industry in a classified job immediately prior to May 29, 1946, then pursuant to requirements promulgated by the defendant trustees as set out in paragraph 5(C) hereof, " * * * he shall be eligible for a pension only upon the completion of twenty years service in the Bituminous Coal Industry, and meets the other requirements of eligibility as contained in paragraphs A and B and its subsections, subsequent to May 28, 1946."

9. Defendants admit plaintiff retired from work in the coal industry after May 28, 1946; that plaintiff was employed in the coal industry for twenty years within the thirty years immediately preceding his application for a pension; and that plaintiff submitted a completed application for pension.

10. Plaintiff did not work in the Coal Industry in October 1942, and was not employed from October 1942 until January 1947 in a classified job in the Coal Industry. That in 1942 he suffered from a sinus condition which during that year required three visits and two separate operations at the Veterans' Hospital, Aspinwall, Pennsylvania, the last one being in September 1942. That a letter prepared by one Minnie Sartoris who signed thereon the name of Dr. Homer R. Mather, Sr., and which was received by the Trust Fund from the plaintiff reads as follows:

"This is to certify that I have treated John Pavlovscak of Whitney, Pennsylvania, for a sinus condition from July 6th, 1939 to August 28, 1948. This condition may be aggravated by working in the mines."

In January 1947, the plaintiff returned to the Coal Industry and was employed by the W. C. Dillon Mine of the Logan J. Harr Coal Company from January 1947, to September 1947; Carpentertown Coal & Coke Company from September 1947, to June 1948; and Jamison Coal & Coke Company from June 1948, to March 1951, as is indicated and outlined in paragraph 7 hereof.

11. Plaintiff submitted to the Fund a letter which was received signed by P. D. Costello, Superintendent, Jamison Coal & Coke Company, Pleasant Unity, Pennsylvania, which reads as follows:

"To Whom It May Concern:

"This is to certify that John Pavlovscak, of Whitney, Pennsylvania, was last employed by this Company beginning on August 5, 1933, and worked in capacities as coal loader, timberman and motor-brakeman, until October 1, 1942, at which time he was excused from service due to necessary surgery operations at the Veteran's Hospital, Aspinwall, Pennsylvania.

"Mr. Pavlovscak left here with the understanding that his job would be available at this Mine upon his return."

A letter from John Volk, Industrial Relations Department, Pittsburgh Coal & Coke Company, Library, Pennsylvania, concerning the records of the Jamison Coal & Coke Company, discloses the following:

"To Whom It May Concern:

"Our Jamison Coal & Coke records show that John A. Pavlovscak was employed at the Jamison No. 20 mine as follows: October 4, 1922 to December 22, 1925. Again employed from August 5, 1933 to December 14, 1942 and at this time resigned due to illness.

"Mr. Pavlovscak's occupation during this period is listed as a miner."

The employment records of the Jamison Coal & Coke Company pertaining to the plaintiff and in the custody and control of Pittsburgh Coal Company and John Volk, Library, Pennsylvania, reveal that the plaintiff ceased work at the mine on September 4, 1942, at which time he resigned due to illness.

12. That plaintiff's wages and earnings at the various occupations, including Stupakoff Ceramic & Manufacturing Company, are revealed on the plaintiff's Social Security Wage Record secured from the Social Security Administration pursuant to prior signed authorization of the plaintiff. These wages were reported to the Social Security Administration by the employers of the plaintiff pursuant to Federal Statute.

13. Defendant trustees, based on the records heretofore and hereafter mentioned, concluded that the plaintiff did not come within the purview of the eligibility requirements as to regular employment in a classified job in the coal industry immediately prior to May 29, 1946, and denied plaintiff's pension application on September 28, 1953, for the following assigned reason:

## "Denial of Pension"

"Applicant has not established proof of regular employment in a classified service in the Coal Industry immediately prior to May 29, 1946."

14. The National Bituminous Coal Wage Agreement executed at the White House, Washington, D. C., during the period of government operation of mines, by J. A. Krug, then Secretary of the Interior, acting as Coal Mines Administrator, and by John L. Lewis, President of the United Mine Workers of America, better known as the Krug-Lewis Agreement, created the first Trust known as the United Mine Workers of America Welfare and Retirement Fund.

15. The defendant trustees have had no written discussion, nor written interpretations for the designation of said date, May 29, 1946, as the cut-off date for pension requirements.

## Discussion

This case has occupied considerable of the Court's time over the past several years, and the Court has examined every phase of this case, and to discuss in this memorandum all of the problems that were raised and considered would cause this memorandum to be lengthier than the voluminous file already existing. The facts as set forth above have been stipulated between the parties, and the basic facts have never been in dispute. The sole factual issue left for determination by the Court at the trial was whether the denial of the application for a pension to the plaintiff herein was arbitrary and capricious, and was there such an abuse on the part of the trustees that their determination should be set aside and the plaintiff awarded a pension.

The plaintiff attempted to establish that a pension was paid to another applicant in circumstances very similar to his. However, the Court did not permit the admission of this other case into evidence. However, even if we did admit this testimony and gave it all the weight plaintiff urges it would not change our decision. Therefore, we make the following Conclusions of Law:

## Conclusions of Law

1. The plaintiff was ineligible for a pension from the defendants as he was not regularly employed in the coal industry in a classified job immediately prior to May 29, 1946, since he resigned from the coal industry in October 1942, and did not resume working in the industry until January 1947.

2. Even if the defendant paid a pension to another applicant in a situation similar to the plaintiff's, the plaintiff had no knowledge of this fact and did not rely on the defendant's action in establishing any course of conduct if any were established by it, and was in no way effected by such action by the defendant fund so as to lead him into any misbelief. The defendant trustees in denying the application of plaintiff did not act arbitrarily or capriciously, but acted pursuant to rules of the United Mine

Workers of America Welfare and Retirement Fund of 1950.

3. A verdict in favor of the defendants is found.